UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **LILLY COLBERT** | * | **CIVIL ACTION NO. 06-1569** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Lilly Colbert, born December 7, 1962, filed an application for supplemental security income on September 21, 2004, alleging disability as of September 29, 2000, due to carpal tunnel syndrome, elbow nerve damage, ovarian cancer, and high blood pressure.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Robert Franklin dated October 22, 2003**. Electromyographic and nerve conduction studies were suggestive of early left carpal tunnel syndrome, but were not diagnostic of left carpal tunnel syndrome. (Tr. 75-76).

**(2) Report from Dr. Jesus Chua dated October 19, 2004**.  Dr. Chua stated that he had treated claimant for carpal tunnel syndrome, allergic rhinitis, viral syndrome, headaches, hypertension, bronchitis, and left knee pain secondary to a fall. (Tr. 91).  He noted that she did not have ovarian cancer, but did have urethral fibroids in October of 2002, and had had a total abdominal hysterectomy with bilateral oophrectomy.  She also had right carpal tunnel release surgery by Dr. Sterling on September 29, 2000, and left carpal tunnel release surgery by Dr. Donna Tesi on September 9, 2004.

Dr. Chua stated that claimant had high blood pressure, which was well-controlled by medication.  He noted that there was no evidence of nerve damage of her elbow, which she alleged.  He said that she had had no problems since the last time he saw her on August 2, 2004, at which time he referred her to Dr. Tesi for the left carpal tunnel syndrome surgery.

Dr. Chua saw no reason why claimant could not do all of the activities needed to perform work. He stated that her left wrist surgery did need some time to recover, but he did not see this as a permanent disability that would impede her from working.

**(3) Records from Dr. Donna Tesi dated August 25, 2004 to January 24, 2005**. On August 25, 2004, Dr. Tesi diagnosed claimant with symptomatic carpal tunnel on the left. (Tr. 107). She performed endoscopic release of a carpal tunnel on the left on September 7, 2004. (Tr. 78). Claimant tolerated the procedure well, and was in stable condition post-surgery. (Tr. 79).

On September 21, 2004, claimant complained of pain in the palm of the left hand. (Tr. 104). Dr. Tesi noted that she had wrapped her bandage too tightly. She was instructed to continue wearing her splint.

On September 28, 2004, claimant continued to complain of left palm pain. (Tr. 103). Dr. Tesi opined that she might have irritated a nerve. Claimant was referred for occupational therapy. (Tr. 92-102).

**(4) Residual Functional Capacity Assessment – Physical dated November 4, 2004**. Claimant had no restrictions. (Tr. 109-115). The examiner noted that she should be able to function with normal activity within 12 months of her carpal tunnel syndrome surgery. (Tr. 109).

**(5) Records from LSU-University Medical Center ("UMC") dated October 17, 2005 to January 30, 2006**. On October 17, 2005, claimant complained of left wrist pain. (Tr. 120). She had a negative Phalen's test, and no atrophy or weakness. (Tr. 118). Her right wrist was asymptomatic. Left wrist x-rays were normal. (Tr. 117). The impression was a neuroma, and no carpal tunnel syndrome recurrence. (Tr. 118).

On January 30, 2006, claimant complained of pain to her left wrist, numbness, tingling, and swelling. (Tr. 122). The impression was a possible failed carpal tunnel release.

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on April 17, 2006, claimant was 43 years old. (Tr. 127). She had completed the tenth grade. (Tr. 128). She was able to read, write, and do simple mathematics.

Claimant had attended vocational school to get her GED, but was unable to complete it. (Tr. 129). She had done some babysitting and housekeeping.

Claimant reported that she was unable to work because of carpal tunnel syndrome. (Tr. 130). She stated that she could not hold things in her hands too long. (Tr. 131). She testified that she had had surgery on her right hand in 2001, a damaged nerve in her elbow in 2002, and left carpal tunnel in 2004. (Tr. 131-32, 134). She said that she gotten a little relief initially, but that it did not really get better. (Tr.

133).

Claimant stated that she still had problems picking up and holding things. (Tr. 134, 139). She reported that she attended physical therapy for three months, but had stopped because she was not getting any better. (Tr. 135-36). She said that she was having more problems with her left wrist at the time of the hearing. (Tr. 138).

Regarding medications, claimant testified that she was taking drugs for blood pressure and allergies. (Tr. 141). She had taken pain medications, but had stopped because they were ineffective. (Tr. 142). She reported that she was still having pain in her hands, which affected her ability to lift and hold things.

**(7) Administrative Hearing Testimony of Patricia Ehlinger, Vocational Expert ("VE")**. The ALJ posed a hypothetical in which he asked the VE to assume a claimant who was 43 years old; had a tenth-grade education; had no significant past work experience, other than a little babysitting; could lift and carry 20 pounds occasionally and 10 pounds frequently; was restricted from any continuous repetitive fine finger dexterity activities; was limited from climbing ladders, ropes, or scaffolds, and could use her hands in employment only occasionally. (Tr. 146). In response, Ms. Ehlinger testified that claimant could work as a lobby or entertainment attendant, of which there were 900 positions statewide and 100,000 nationally; cashier, of which there were 17,000 jobs statewide and 1,000,000 nationally; information clerk, of

which there were 2,000 jobs statewide and 175,000 nationally, and entry level general office clerk, of which there were 3,000 jobs statewide and 240,000 nationally. (Tr. 146-47).

**(8) The ALJ's Findings are Entitled to Deference**. Claimant argues that the ALJ erred: (1) in finding that claimant could work at available occupations in the national economy which were not consistent with her limitations; (2) in failing to find the appropriate presentation of the hypothetical situation to the vocational expert, and (3) in failing to order a consultative examination.

As to the first argument, claimant asserts that the Commissioner erred in finding that she could perform work available in the national economy. Specifically, she asserts that the ALJ erred in relying on Dr. Chua's report, rather than the surgeon's opinion. [rec. doc. 8, pp. 5-6].

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically

acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence.*" (emphasis added). *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, claimant's treating physician, Dr. Chua, opined that claimant could do all of the activities that she needed to perform work. (Tr. 91). While he noted that she would need time to recover from her left wrist surgery, he did not see this as a "permanent disability that would impede her from working." Dr. Tesi did not give an opinion regarding claimant's ability to work. (Tr. 95-107). However, the consultative examiner found that claimant had no limitations whatsoever. (Tr. 108-115).

It is well established that conflicts in the evidence are for the Commissioner and not the courts to resolve. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). In this case, the ALJ's opinion is supported by both the opinions of both the treating physician and the consultative examiner. Accordingly, the ALJ's finding regarding claimant's ability to work is entitled to deference.

Next, claimant argues that the ALJ did not pose any questions to the vocational expert regarding the pain in her hands. [rec. doc. 8, p. 11]. However, despite the fact that Dr. Chua and the state agency consultant found that claimant had no limitations whatsoever, the ALJ still incorporated limitations in the hypothetical to the vocational expert regarding her ability to lift, carry, and perform "continuous repetitive fine finger dexterity activities" to account for claimant's pain. (Tr. 91; 108-114; 146). As the ALJ's hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, the ALJ's findings are entitled to deference. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Finally, claimant argues that the ALJ should have referred claimant for a consultative examination based on the "slight" medical records. [rec. doc. 8, p. 10]. Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The decision to require such an examination is discretionary. *Id.* In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law

8

judge to make the disability decision." A claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under 20 C.F.R. § 416.1444." *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989), quoting *Jones*, 829 F.2d at 526.

As set forth above, the ALJ relied on records from claimant's treating physicians regarding her impairment. (Tr. 12). Under these circumstances, a consultative examination is not necessary. In any event, claimant has not raised a "suspicion" concerning her impairment that would justify a consultative examination. Accordingly, the ALJ did not err in failing to order one.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS**

9

**REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed June 25, 2007, at Lafayette, Louisiana.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE